IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNETTE D. T., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) Case No. 24-cv-00508-SH |
| FRANK BISIGNANO,[1] Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Annette D. T. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381–1383f.[2] In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision.

**I.   Disability Determination and Standard of Review**

Under the Act, an individual is disabled if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

[2] Plaintiff's original application also included a request for benefits under Title II of the Act, 42 U.S.C. § 401–434. (R. 201–04.) However, the ALJ determined that the relevant period began October 6, 2020, after Plaintiff's date last insured. (R. 17.) As such, Plaintiff was not eligible for Title II benefits. (*Id.*) Plaintiff has not appealed this ruling, so only the Title XVI benefits are before the Court.

§ 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id*. § 416.920(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

2

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff filed for Title XVI disability benefits on November 23, 2021, with a protective filing date of November 9, 2021. (R. 17, 205–10.) In her application, Plaintiff alleged she has been unable to work since April 1, 2016,[3] due to conditions including osteoarthritis in her lower back and both knees, bilateral knee replacement, carpal tunnel syndrome, anxiety, depression, GERD (gastroesophageal reflux disease), and urgent bowel syndrome. (R. 205, 250.) Plaintiff was 51 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 27, 205.) She has a high school education and past relevant work as a vault cashier and cashier supervisor. (R. 56, 251.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 111–15, 125–28.) Plaintiff then requested and received a hearing before an ALJ. (R. 34–61, 133–34.) The ALJ denied benefits and found Plaintiff not disabled. (R. 17–27.) The Appeals Council denied review on September 9, 2024 (R. 1–6), rendering the Commissioner's decision final, 20 C.F.R. § 416.1481. Plaintiff now appeals.

---

[3] The ALJ denied any implied request to reopen the prior application. (R. 17.) As such, the relevant time period began on October 6, 2020. (*Id.*)

### III. The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity after October 5, 2020. (R. 20.)  At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) bilateral degenerative joint disease of the knees; (3) bilateral carpal tunnel syndrome; and (4) obesity.  (R. 20–21.)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment.  (R. 21–22.)

The ALJ then determined that Plaintiff had the RFC to perform light work with additional limitations:

> the claimant can stand and walk for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.  The claimant cannot climb ladders, rope, or scaffolds, but can occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch, or crawl.  The claimant can frequently finger bilaterally.

(R. 22.)  The ALJ provided a recitation of the evidence that went into this finding. (R. 22–26.)  At step four, the ALJ found Plaintiff unable to perform her past relevant work. (R. 26.)  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Cashier II, Small Products Assembler, and Router.  (R. 26–27.)  Accordingly, the ALJ concluded Plaintiff was not disabled.  (R. 27.)

### IV. Issues

On appeal, Plaintiff's sole argument is that the ALJ's assessments of the medical opinions of Jeffery Young, D.O. ("Dr. Young") and Joseph Gelinas, APRN-CNP ("Nurse Gelinas") were unsupported under the framework set out in 20 C.F.R. § 416.920c.  (Dkt. No. 12 at 4–12.)  The Court finds no reversible error.

V.  **Analysis**

  A.  **Medical Opinions—Generally**

A medical opinion is a statement from a medical source[4] about what a claimant can still do despite her impairments, and whether she has one or more impairment-related limitations or restrictions in her ability to perform the physical, mental, or other demands of work activities, or in her ability to adapt to environmental conditions.  20 C.F.R. § 416.913(a)(2).  When considering a medical opinion, an ALJ does not defer or give any specific evidentiary weight to the opinion.  *Id.* § 416.920c(a).  Instead, the ALJ evaluates the "persuasiveness" of the opinion by considering five factors.  *Id.* § 416.920c(a) & (c).  These factors are (1) the supportability of the opinion; (2) the consistency of the opinion; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) any other factors that tend to support or contradict the opinion.  *Id.* § 416.920c(c).

Of those five factors, the ALJ must always explain how he considered only two—supportability and consistency.  *Id.* § 416.920c(b)(2).  Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be."[5]  *Id.* § 416.920c(c)(1).  Consistency, meanwhile, has both an internal and external element.  "The more consistent

---

[4] Medical sources include licensed osteopathic doctors and licensed advanced practice registered nurses (APRNs), the latter being limited to impairments within their licensed scope of practice.  20 C.F.R. § 416.902(a)(1) & (7).

[5] The Tenth Circuit recently indicated it "could rephrase this as a requirement to ask, 'Are the examiner's opinions well explained, and are they supported by the medical evidence he or she relied upon?'"  *Riley v. Comm'r, SSA*, No. 25-5007, 2025 WL 3276227, at *2 (10th Cir. Nov. 25, 2025) (unpublished).  Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. § 416.920c(c)(2). Such "evidence from other sources" includes an analysis of whether there are "internal conflicts within the evidence from the same source." *Evaluating Med'l Opinions and Prior Admin. Med'l Findings–Claims Filed on or after Mar. 27, 2017*, Program Operations Manual System, DI 24503.025(E)(2).

Here, Plaintiff attacks the ALJ's articulation of both supportability and consistency as to Dr. Young and Nurse Gelinas. For reasons explained below, the Court finds that the ALJ adequately articulated these factors and that his decision is supported by substantial evidence.

**B. Dr. Young**

**1. Dr. Young's Consultative Examination**

Dr. Young performed a consultative physical examination of Plaintiff on August 27, 2022. (R. 1528.) In his report, Dr. Young outlined Plaintiff's subjective complaints and oral medical history; listed the results of his physical examination of Plaintiff; and noted his review of one medical record from April 2022. (R. 1528–33.) Dr. Young listed Plaintiff's "probable diagnoses" and the reasons therefor. (R. 1534.) He then concluded,

> The claimant has severe limitations with sitting, standing and walking due to chronic pain. The claimant does not need an assistive device with regard to short and long distances and uneven terrain. The claimant has severe limitations with lifting and carrying weight due to chronic pain. There are limitations with bending, stooping, crouching and squatting and the claimant will be able to perform these occasionally due to chronic pain. There are limitations with reaching, grasping, handling, fingering and feeling and the claimant will be able to perform these frequently due to chronic pain and bilateral carpal tunnel syndrome. There are no relevant visual or communicative limitations. There are relevant workplace environmental limitations due to bilateral carpal tunnel syndrome, chronic pain and mental health issues.

(R. 1534–35.)

6

The ALJ found Dr. Young's opinion "somewhat persuasive, as to limitations in various areas that may be related to light type work with activity demands, but . . . not fully supported with quantifiable functional limitations based on the consultative physical exam and observations." (R. 25.) The ALJ also noted that "the assessment is somewhat consistent with the medical evidence of record with regard to general limits in lifting, carrying, and other movements and manipulation due to chronic pain in multiple joints and bilateral carpal tunnel syndrome." (*Id.*) The ALJ then cited several portions of the record. (*Id.*[6]) These included the same portions of the record the ALJ had cited previously when summarizing the medical evidence from October 2020 through the August 2022 consultative exam (R. 23[7]), as well as medical evidence mostly occurring after the exam (R. 23–24[8]).

### 2. Prejudging the RFC

Plaintiff initially argues that the ALJ erred by deciding on a "light" RFC first and then finding unpersuasive any portions of Dr. Young's opinion that contradicted the prejudged RFC. (Dkt. No. 12 at 7.) There is no evidence the ALJ did this. Instead, it appears the ALJ was simply summarizing his conclusion as to the persuasiveness of Dr. Young's opinion before going on to discuss the supportability and consistency factors. (R. 25.)

---

[6] Citing B7F/1–2; B9F/6–8; B10F/1–5, 12; B12F/13, 18; B13F/11–12; B16F/1–8; B17F/1–6; B18F/6–14; B23F/8, 34, 49; B24F/6–8, 14; B25F/1–8; B26F/11–14; B27F/2–9; B28F/45–49. (R. 885–86, 1139–41, 1148–52, 1159, 1182, 1187, 1209–10, 1528–35, 1537–42, 1623–31, 1877, 1903, 1918, 1939–41, 1947, 1959–66, 2010–13, 2119–26, 2187–91.)

[7] Citing B7F/1–2; B9F/6–8; B10F/1–5, 12; B12/F13, 18; B13F/11–12; B16F/1–8; B22F/16–17; B24F/14. (R. 885–86, 1139–41, 1148–52, 1159 1182, 1187, 1209–10, 1528–35, 1866–67, 1947.)

[8] Citing B17F/1–6; B18F/6–14; B23F/8, 34, 49; B24F/6–8, 14; B25F/1–8; B26F/11–14; B27F/2–9; B28F/45–49. (R. 1537–42, 1623–31, 1877, 1903, 1918, 1939–1941, 1947, 1959–66, 2010–13, 2119–26, 2187–91.)

### 3. Supportability

Plaintiff next argues the ALJ's supportability analysis was deficient because he failed to contact Dr. Young for clarification on his opinion. (Dkt. No. 12 at 7–8.) As noted above, the ALJ found Dr. Young's opinion not fully supported with "quantifiable functional limitations based on the . . . exam and observations." (R. 25.) Plaintiff argues that, if the opinion that a limitation was "severe" was too vague, the ALJ should have contacted Dr. Young to provide more information. Plaintiff is wrong.

ALJs have a basic obligation to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). Normally, the ALJ may "require counsel to identify the issue or issues requiring further development," because he should "be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Plaintiff was represented by counsel at the hearing. (*See, e.g.*, R. 37.) Counsel did not identify any areas that required further investigation or otherwise challenge the sufficiency of the record.

Recontacting Dr. Young was also not required by the regulations. When evidence is inconsistent, the ALJ considers the relevant evidence to see if he can determine disability based on the evidence he has. 20 C.F.R. § 416.920b(b)(1). If the evidence is consistent but insufficient, or if the ALJ determines he cannot reach a conclusion based on the evidence he has, he will determine the best way to resolve the inconsistency or insufficiency. *Id.* § 416.920b(b)(2). This may include—but does not require— recontacting a medical source. *Id.* § 416.920b(b)(2)(i). Evidence is insufficient "when it does not contain all the information [the ALJ needs] to make [his] . . . decision." *Id.* § 416.920b(b). Dr. Young's opinion was only one piece of evidence in a voluminous record. Plaintiff has shown no insufficiency in the record that prevented the ALJ from

8

making his decision; she simply wishes Dr. Young's opinion had more support or presented opinions that were more useful to the ALJ.

"Here, there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination." *Cowan*, 552 F.3d at 1187.

### 4.   Consistency

Additionally, Plaintiff faults the ALJ's consistency analysis because it only stated that Dr. Young's opinions were "somewhat consistent" with evidence, without then identifying or explaining how it was "inconsistent" with the other evidence. (Dkt. No. 12 at 8–9.) Plaintiff reads the articulation requirement too stringently. As noted in the only case Plaintiff cites that relies on current regulations:

> The Regulations do not prescribe the depth at which the ALJ must discuss the factors of supportability and consistency. But at a minimum, the ALJ must provide an explanation that allows the reviewing court to follow her reasoning and communicates how she considered the factors of consistency and supportability from each medical source's opinions.

*J.T.L. v. Kijakazi*, No. 22-CV-02343-NYW, 2023 WL 5017241, at *5 (D. Colo. Aug. 7, 2023) (citation modified). Here, the ALJ articulated the consistency of Dr. Young's opinion, stating he found it "somewhat consistent with the medical evidence of record with regard to general limits in lifting, carrying, and other movements and manipulation due to chronic pain issues in multiple joints and bilateral carpal tunnel syndrome." (R.25.) As noted above, the ALJ then cited portions of the medical record that he had just summarized in the preceding pages. (*See* R. 23–24 (in which the ALJ had discussed how such records led to a need for a "light exertional level with reduced stand and/or walk limits" and "limits to frequent fingering bilaterally").) This is not a situation where the lack of an explanation renders the Court unable to follow the ALJ's opinion. *Cf. J.T.L.*, 2023 WL 5017241, at *8 (faulting the ALJ for not explaining why she found an

9

inconsistency, when there was not an obvious connection between the cited evidence and the ALJ's conclusion). Here, the Court can follow the ALJ's reasoning, and no reversal is required. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (where courts "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal").

### C. Nurse Gelinas

#### 1. Nurse Gelinas's *Medical Source Statement*

Plaintiff first saw Nurse Gelinas on October 7, 2021. (R. 1148 (noting purpose of visit was to "establish care").) At Plaintiff's third visit with Nurse Gelinas, on December 22, 2021,[9] he completed a *Medical Source Statement - Physical*. (R. 1165–68.) The form contained sections on diagnoses, prognoses, symptoms, pain, and findings or objective signs. (R. 1165.) After completing these portions, Nurse Gelinas opined that Plaintiff could

- stand/walk 0–2 hours in an 8-hour workday;
- sit for 0–2 hours in an 8-hour workday;[10]
- rarely[11] lift and carry 0–10 pounds and never lift or carry 20 or more pounds;

---

[9] The Court, therefore, rejects Plaintiff's argument that the ALJ failed to consider that Nurse Gelinas had a treating relationship with Plaintiff from October 2021 through February 2023. (Dkt. No. 12 at 10 (arguing the ALJ did not consider "the extent" of that relationship).) The ALJ was not required to articulate his analysis of the "relationship with the claimant" factor, which includes the length of time the medical source has treated the claimant. *See* 20 C.F.R. § 416.920c(b), (c)(3). Worse, Plaintiff's argument deceptively implies that the medical opinion was based on a 16-month treatment relationship, instead of occurring only 2.5 months into the relationship.

[10] More specifically, Nurse Gelinas opined that Plaintiff was "unable to sit/stand/walk more [than] 20–30 minutes." (R. 1166.)

[11] The form defined "rarely" as 1–5% of an 8-hour working day. (*Id*)

- rarely twist, stoop (bend), or climb stairs and never crouch/squat;
- grasp, turn, or twist objects for less than 5% of an 8-hour workday;
- perform fine manipulation with fingers for 3% of an 8-hour workday; and
- reach (including overhead) for 5% of an 8-hour workday.

(R. 1166–67.) Nurse Gelinas also opined that Plaintiff did not need a cane or other assistive device for occasional standing/walking and that Plaintiff would be absent from work, on average, more than four days a month. (R. 1165, 1167–68.)

The ALJ found this opinion not persuasive. (R. 25.) Particularly, the ALJ found "the extreme limits are not supported by the nurse with adequate explanation or reference to the record and appear[] to be based on subjective complaints." (*Id.*) The ALJ also found the assessment of "extreme limits, breaks, and absences is wholly inconsistent with the relevant progress notes, consultative examination, physical exams, diagnostic testing, surgical interventions, and her activities of daily living." (*Id.*) The ALJ then cited the same portions of the medical record used in his consistency analysis of Dr. Young's opinion,[12] as well as Plaintiff's adult function report and the third-party function report completed by her son. (*Id.*[13]) As with the cited medical records, the ALJ had previously summarized his analysis of these function reports in the decision. (R. 23.[14])

---

[12] *See* n.6, *supra*.

[13] Citing B4E and B6E. (R. 260–67, 276–83.)

[14] "Despite these allegations, the evidence indicates [Plaintiff] maintains the ability to perform numerous tasks including attending to her personal care needs, preparing meals, performing household duties, watching TV, talking on the phone, texting, video chatting, driving a car, shopping in stores, paying bills, spending time with family, taking care of children, and taking care of pets." (R. 23.)

11

### 2. Supportability

Regarding Nurse Gelinas, Plaintiff argues the ALJ's supportability analysis failed because "the ALJ baselessly alleged the opinion was based on Plaintiff's subjective complaints." (Dkt. No. 12 at 10.) As a preliminary matter, this argument misreads the ALJ's decision. The ALJ actually found that Nurse Gelinas's opinion was not supported "with adequate explanation or reference to the record <u>and</u> appeared to be based on subjective complaints." (R. 25 (emphasis added).) As the regulations instruct, the "more relevant the <u>objective medical evidence and supporting explanations</u> presented by a medical source are to support" an opinion, the more persuasive that opinion will be. 20 C.F.R. § 416.920c(c)(1) (emphasis added). The ALJ was correct in noting that Nurse Gelinas's opinion did not contain much by way of explanation or reference to the record. Other than citing Plaintiff's symptoms (R. 1165 ¶ 4) or accounts of issues that could not have come from an examination (*id.* ¶ 5 (noting pain as existing "consistently throughout the entire day")), the only support Gelinas provided was to note "multiple joint pain on palpitation" (*id.* ¶ 6). Gelinas did not reference any other exam notes or test results, nor did he provide any explanation—except perhaps to note that Plaintiff's fine motor skill restrictions were secondary to carpal tunnel syndrome and arthritis. (R. 1167 ¶ 14.)

Moreover, the ALJ's statement that Nurse Gelinas's findings appear to be based on Plaintiff's subjective complaints is not "baseless." Most of the information in the form that precedes Gelinas's opinions is either explicitly symptom-based, implicitly symptom-based—something no treating physician could know but for subjective complaints, or is a statement of events not supported by any reference to medical exams or tests. Nurse Gelinas further stated that his opinions went back to April 2016, when he had only been seeing Plaintiff for 2.5 months, and there was no indication he had reviewed any prior medical records. (R. 1168.)

Considering this, there is substantial evidence supporting the ALJ's conclusion that the opinion was not supported by explanation or reference to the record and was based on Plaintiff's subjective complaints.

### 3. Consistency

Finally, Plaintiff attacks the consistency analysis of Nurse Gelinas's opinion on the same grounds as Dr. Young's opinion. (Dkt. No. 12 at 10–12.) The Court rejects the arguments for the same reasons. The ALJ did not just find the opinion "inconsistent" with unexplained citations to the record. These were citations he had previously summarized, including by noting Plaintiff's improvement with treatment and that "her physical and neurological findings have been normal other than a slow and antalgic gait." (R. 23.) For the consistency analysis of Nurse Galinas's opinion, the ALJ added a citation to the reports of daily living, which the ALJ found indicated Plaintiff could perform tasks to such an extent that she did not have "an inability to do all work." (*Id.*) Again, the Court is able to follow the ALJ's reasoning regarding the consistency of Nurse Gelinas's opinion, and it is supported by substantial evidence. Plaintiff's arguments are rejected.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is AFFIRMED.

**SO ORDERED** this 12th day of February, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT